3090476 for Cicciarelli, et al., done by John Mulgrew, Jr. v. The Pleasure Driveway and Park District, I believe, by James Cosby. If the Court please. Counsel. I'm John Mulgrew, and I'm one of the counsel for the appellant in this case, the plaintiff appellant. This is an easement case, as the Court knows from reading the briefs, and we believe that it's a perpetual easement case. This easement cannot be read in any other fashion. It states in numerous places that it was the express intention of the parties that this be permanently, this easement be permanently appurtenant to the real estate in question. There is no language which is inconsistent with that in the easement. What about the language about building a road? What about the language about building a road? That just states a purpose, Your Honor, and we will get to that, but I'll get to it right now. I mean, there is an order. You can have an easement that states a purpose. That purpose in this case is contemplated by promises made by the plaintiff as respects what he would do with respect to the easement. But the law in Illinois is absolutely clear that in order to terminate and express grant easement for a purported cessation of its purposes, then you must have an abandonment or the purposes have been rendered impossible of accomplishment. That could not be stated with more emphasis than is stated in McCann v. R. W. Dunton. Well, what was the consideration for the grant? The consideration was the promises. To what? The promise. The consideration was the promise to build a highway, et cetera. Those promises were breached. There's no doubt about that. Those promises were breached. However, that doesn't mean there's been a failure of consideration. That means there's been a breach of covenant. And that is established clearly by the case cited by defendant on page 18 of his brief. That's the case of Wilson on page 18 of the defendant's brief where you have a contract containing on the part of one party his promises to do something in the future. The promise is the consideration. If he breaches those promises, those are breaches of covenants. The law is absolutely clear in Illinois, and the cases support our position in that regard. The Wilson case and that Wilson case takes what I just stated. The Dunton case and the Dunton case, if you shepherdize it, you find other cases supporting it. You cannot terminate an express grant easement that otherwise states that it's going to be in perpetuity unless there has been a legal abandonment, about which more later, or that purpose, that purported purpose, becomes impossible of accomplishment. That is the law in Illinois, and unless the court is going to change the law, that is the law in Illinois. Well, the action in 1961 was of naught, right? What? The action in 1961, when the Park District declared that it was over. Yeah. Abandoned. Well, I would say what? What? That really meant nothing. It meant that cancellation of easement, we say that that meant nothing, yes. Because it was an illegal act. It was an illegal act on the part of the defendant to purport to unilaterally cancel a perpetual express grant easement, notwithstanding the fact that the promises made by the dominant tenant in the easement were purportedly breached. The easement was granted in 1957. In 1961, the defendant purported to cancel the easement. That's not very long. However, however, however, the law is absolutely clear that if this is an express grant perpetual easement, and we believe that it is, and we believe that the cases that we cite in our brief absolutely support that, then it can't be terminated unless there has been an abandonment, and there's been no abandonment here, or the reasons for the easement have become impossible of accomplishment. And that's not happened either. With regard to abandonment, under your theory of perpetual easement, what would it take to abandon? Well, what it takes is the law. You have to have nonuser, and that can last forever. Nonuser can last forever. If there is no affirmative act showing intent to abandon or acquiescence as respects abandonment, acquiescence in the conduct of the servant tenant holder, then both of those have to be proven by clear and convincing evidence. Then you can't have an abandonment. There's a case cited on our brief. So they get this notice in 61. What? They get this notice in 61 that it's over. The road, they stop construction of a road. Nothing's done for all this time. But that's not abandonment. Of course it's not abandonment. Under the law, it's not abandonment. When the cases support our position in that regard, that can't be abandonment. It may be abandonment in a lay sense, of course. It may well be. You say, hey, you blew it. But that's not abandonment in the legal sense. And these are easement cases. This is an easement case, Your Honor. We cited easement cases in support of our position. The plaintiff, in an attempt to construe this as a breach of contract case, has cited contract cases. Contract cases don't do the job here. We have to have easement cases because easements have peculiar rules. Peculiar rules? When Soldantis, or however it's pronounced, abandoned the building of the easement already built. What? The Soldantis? Yes. Is that their name? When they attempted to build the easement, the roadway. Right. And then gave up? Right. Is that not an abandonment? That is not an abandonment. An intentional abandonment? That is not an abandonment in the legal sense with respect to it. That's just simply non-user. They ceased using the easement. There is non-user here. We admit that there's non-user. We've cited cases, not only from Illinois, numerous cases on abandonment. We've cited cases and even an ALR annotation showing that there can be non-user with respect to an easement forever. And there never will be a legal abandonment unless you can prove acquiescence or... They were to build a road. Right. Right? They started to build a road. Right. And stopped. Right. And then, on top of that, they apparently acceded to the park district, repairing the damage that they did, and fixing that 20 feet or 20 yards, whatever it was, and did nothing more. Well, that's not abandonment, Your Honor. And I don't know how they acceded to the park district repairing it. The park district repaired the purported damage done, but there was no accession on the part of the plaintiff. I didn't state that. They didn't object? What? Did they object? There's no evidence that the plaintiff objected to the defendant repairing the easement area. No, there's no evidence of that. But that, it's very, very tough. It's almost impossible to end unilaterally an express grant easement that is otherwise intended to be perpetual. That's the law of Illinois, and the cases that we cite support that. They support that. They're easement cases. We are here to expound the law of Illinois as we see it, and we think we see it correctly. You're calling it a unilateral decision to cease the easement, but here you have notice from one party that it's over, and then acquiescence from the other party. I fail to see how that's unilateral. Unilateral is the notice of cancellation. There is no acquiescence. That document under the law in Illinois, that document was a voidable or void anonymity. That document, that notice of cancellation, was no good. But your client did not challenge it. No, did not challenge it until now, until now. And the law is clear, Your Honor, that in order for there to be an abandonment of an easement, you have to have an affirmative act that clearly and convincingly establishes the intent to abandon, or you have to have unequivocal acquiescence by clearly convincing evidence that there has been an abandonment. That has not occurred here. Excuse me just a moment, Your Honor. Excuse me. Oh, that's fine. With regard to the time period, after the notice went out in 61, when's the first time anybody said that we're going to utilize our perpetual easement then? Well, after the notice went out, there were all sorts of things that happened. There were remonstrations by the Soldatis against the intent to terminate the easement, saying that, hey, I spent $11,000 of my own money, etc. I've been wanting to do this, but I've had some problems with the city or the village of Peoria Heights, which is the municipal locus of where this easement and property is. And then there were several other things. The easement was staked out, and those stakes may still exist based upon the record before the court, showing the traverse of the easement. The plaintiff's predecessors in interest purported to convey the easement all the way up through till Maurice Cicerelli got it. They got it from? The conveyances. They got it from? They got it from Hafner. The Cicerellis got it from Hafner. Hafner got it from Soldati. And how many years did Hafner have the property? Hafner didn't have the property very long. Hafner had the property maybe a year and a half, two years. And he then conveyed the property, along with the easement rights, to Mr. Cicerelli. What did the Soldatis do from 1961 until Hafner sold the property with regard to the easement? They remonstrated against his termination. They, in 1988, had a survey plat recorded with a recorder of these, which particularly and totally described the easement as totally inconsistent with any intent to abandon it. Was that done along with the subdivision of the property, the subdivision of the property? No, no, that was just a plat that Mr. Soldati caused or commissioned, it says caused in the instrument. He got a land surveyor to show the easement record again, not only in linguistic terms, but also graphically, so it would be easily shown. Wasn't that part of the sale to Hafner? What? In preparation for the sale to Hafner, wasn't that done? Yes, it was in preparation for the sale to Hafner, that's correct. That easement, as we will go along a little further, how much time do I have left? You have about two minutes. I haven't been able to render my argument, Your Honor, because of the questions. I guess what I'll have to do is continue my argument in the five minutes that I have after the defendant makes his argument. I guess I better do that since I only have a minute left. I should also say at this juncture, however, that with respect to that survey plat, that was alleged in paragraph four of the complaint for declaratory judgment as having been in existence and filed with the recorder of deeds, and that has been judicially admitted by the defendant, so the defendant had actual knowledge of not only the existence, but the recordation of that plat. I will finish my argument to the extent that I have time to finish it when I reach the court again. Thank you, Counselor. Counselor, you may respond. May it please the Court and Counsel, my name is Jim Konski, and I represent the Pleasure Driveway and Park District of Peoria, Illinois, commonly known as the Peoria Park District. And this case does create or does have a unique set of facts and circumstances, and I haven't found any really Illinois case that's comparable to the facts of this case. By way of a few background points of the facts, when the Soldatis first acquired this six-acre parcel in 1955, the parcel had access to Route 29, commonly known as Galena Road, which joined the six-acre parcel. In 1957, Soldati, his attorney and engineer, approached the Park District with specific, detailed plans to build a subdivision consisting of six homes on the six-acre parcel. And Mr. Soldati wanted access to Grandview Drive for this subdivision, although he would have had access to Route 29, did have access to Route 29. And the Park Board agreed to the easement. The Park District recorded the easement in November of 1957. As the Court has noted, the Soldatis agreed to assume the entire cost of construction and maintenance of the roadway, and they also agreed to construct a subdivision on the six-acre parcel. And they also agreed to permit the Park District free and unlimited access and use of the roadway for public park purposes for an extension of the Grandview Drive. Soldati started construction of the roadway in 1958 by clearing the hillside on the bluff. This is a very steep bluff below Grandview Drive. He completely stopped work on the road, most likely in very late 1958 or early 1959, after clearing the hillside of trees and vegetation within the easement. He never again resumed any work on the road, and he never fixed the damage that was done to the hillside by scraping all of the vegetation off of the hillside. In a series of public park board meetings beginning in February of 1959, where the Park Board addressed the conditions on the bluff left by Mr. Soldati, and I've included in the brief and in the stipulation of facts in the record the minutes of these meetings, which are very, very interesting. The board meetings of February 18, 1959, which was the first meeting, public board meeting, where the problems with the roadway being abandoned were looked at. President Dunn, the president of the Park Board at that time, informed the board that Soldati had already asked how he can get out of his agreement. And then the board then looked at these conditions again in August of 1959. There are minutes May of 1960, June of 1960. By June of 1960, the Park Board was very concerned that the erosion caused by Soldati, abandoning the work after clearing the steep hillside, would cause a possible washout of Grandview Drive. And it got so bad that on November 30, 1960, a number of residents that live on Grandview Drive petitioned the board to terminate the easement, stating that Soldati had abandoned the roadway and neglected and maintained the easement. He and his attorney appeared at the November 30 board meeting. He was informed of the conditions that he had left by abandoning all work on the roadway. A vote on rescission of the easement was tabled at that time and held over for a subsequent meeting. His attorney and Mr. Soldati also appeared at a subsequent board meeting on December 4, 1960. Nine months later, on August 7, 1961, the Park Board again took up the matter. President Donovan requested the Park Board attorney to start the necessary proceedings to rescind the easement. During that period, from December of 1960 to August 7, 1961, there was no work done on the easement, no repairs made, and no further work to actually construct the roadway. Finally, the Park Board voted unanimously to rescind the easement on October 25, 1961. As you know, there was a notice of cancellation of easement served on the Soldatis personally. The notice of cancellation was also recorded in the Peoria County Recorder's Office on November 7, 1961. There was no effort to actually build the road after it was abandoned in either very late 1958 or early 1959. There was no effort made after that by Sol Soldati to protest the cancellation of the easement. The remonstrances that Mr. Soldati made according to what the plaintiff's attorney said, those were made prior to the actual notice of cancellation of the easement. After the easement was canceled, there is no record to indicate that there was ever any attempt further by Soldati to either build the road, protest the cancellation of the easement, nothing. Twenty-seven years later, in 1988, Mr. Soldati had a plat prepared. It was recorded, and then he conveyed 2.59 acres of the six acres to a Timothy Hafner, and Mr. Hafner owned the 2.59 acres from March of 1988 to January of 1991. He did not attempt to construct the roadway or use the easement. And then he conveyed, Mr. Hafner conveyed the 2.59 acres to Maurice Cicirelli in 1991. Karen Shadid, the daughter of Mr. Cicirelli, stated that there was no record of any title search being done by Cicirelli prior to the conveyance to him from Hafner in 1991. Obviously, if there had been some title work done, it would have picked up the notice of cancellation back in 1961. There was no use of the easement for roadway purposes by the Cicirelli family, and finally, a suit was filed in 2003. Contrary to what was said by Mr. Mulgrew, the Park District had no actual knowledge of the reporting of the plat in 1980, 1988. Well, it's a public record. It's a public record. I understand that, but as far as actual knowledge, it would have been, it wasn't given to us. It was in no way brought to our attention as, hey, we're claiming that this is a valid easement. We made the arguments in the brief, and I won't go through them in any detail. Obviously, we feel that in almost all instances where you have an easement that says it's a permanent easement, it's a permanent easement, and the courts are very strong in protecting those easements. However, this case is the exception to that general rule. This is a very unique set of facts and a very strong set of facts. In the construction of easements, the courts ascertain and give effect to the intention of the parties, and they also consider the words of the instrument and the circumstances contemporaneous to the transaction. Soldati wanted the easement, and the Park District granted the easement, so that he would have access to a subdivision that he was going to build. And this subdivision wasn't going to be built, you know, 40 years in the future. It was going to be built immediately. In fact, he started work on the road immediately after he was given the easement. But based upon the detailed plans that were submitted to the Park District by Mr. Soldati, his attorney, and his engineer, obviously a consideration for granting the easement was that he agreed to pay for the cost of the construction and maintenance of the roadway, and that the Park District would be able to use this roadway as an extension of Grandview Drive. And although there wasn't any time limit specifically expressed in the easement about when this would take place, we believe, and the cases hold, that when you don't have a specific time limit, you look at the intention of the parties, and you have a reasonable time limit implied. And in this case, it's very clear that the parties intended this roadway to be built immediately. In fact, Soldati did start construction on the roadway, and then the easy part was having a bulldozer go out and scrape the hillside. The hard part, given the steepness of this property, would have been actually building the road, and he soon abandoned that work. So we believe that in this case, there was a complete failure of consideration which permitted the Park District to cancel the easement. And that cancellation of easement, we believe, is effective and valid in this case. Certainly, there was a two-and-a-half-year period from February of 1959 to November of 1961 where Soldati could have either completed the roadway, fixed the damage, done something to go forward with this project. He didn't do it. Park District gave him plenty of notice. He appeared with his attorney at numerous Park District meetings. We believe that the cancellation was effective, even if it isn't effective, even if you say, well, that's not effective. We do have adverse possession also. In fact, the Park District, ever since the easement was canceled, they immediately repaired the substantial damage that was done to the bluff. And the very blurry picture from the Fury of General Starr that is in the exhibits in this case doesn't do this ravine or ditch that was there justice. It was a very deep ravine and kind of a serpentine pattern as it went down the bluff. That had to be repaired. And from that point on, the Park District has used this property as part of the scenic overlook of the Illinois River Valley. It's one of 10 or 11 scenic overviews. It's mowed. The leaves are taken up in the fall. There's annual cutting of mulberries and black locusts and box elders, the other kind of basic trees. There's picking up of litter on a daily basis. There's a picnic table there. There's a trash can there. And many people use this. And so we believe that all of the factors involved in adverse possession are, in fact, present in this case. And I won't go through all of them here. But we believe that all of them are in effect for this case. And given the kind of property that it is, the Park District has done everything that it needs to do to have adverse possession. Obviously, the notice of cancellation, which was served on the Soldadis and also recorded, is the equivalent of unfurling the flag and showing that nobody can use this as a roadway anymore. We also believe that abandonment has been shown. Obviously, as the Illinois Supreme Court case of Chicago title versus Wabash-Randolph holds, you have to prove an intent to abandon. But that can be proved, obviously, by some act or statement made by the dominant tenant. But it can also be by the adverse acts of the servient state acquiesced in by the owner of the dominant estate. And that's the important and controlling consideration. This is exactly what happened here. The Peoria Park District, after two and a half years of talking to Mr. Soldadi about their concerns, said we're going to cancel the easement. They canceled the easement. They recorded the notice of cancellation. They served it a point. And he acquiesced in that by doing absolutely nothing over the entire time that he had that property. Either the six-acre property, which he sold the remainder later in 1988 after he sold the 2.59 acres, did nothing. No protests. And so we believe that that is an acquiescence in it, which is the important consideration in this case. As long as he owned that six acres, he used that six acres for numerous businesses. There were a number of restaurants there. And it was a pretty busy piece of business property, all of which was accessed from below on Route 29. So he had access to that property. If he had wanted to go forward with the roadway, he should have done something. Doing nothing, he has acquiesced in it. As you know, the circuit court, which we believe was entirely correct in determining that the statute of limitations of the 735 ILCS 513.118 bars the plaintiff's case. Counselor, two minutes. Okay. Bars the plaintiff's claim in this matter. The trial court found that the 1957 easement, which is the subject of the suit, is an interest in real estate, which is covered by that 40-year statute. The trial court found that the 1961 notice of cancellation put the issue of the validity and viability of the easement grant at issue. The circuit court found specifically from the record presented that there was no use of the easement for the stated purpose for over 40 years. I think that's very clear from the record. He found on the basis of those that the 40-year statute applies to bar the claim. I agree with that. I think the court made the correct decision there. I also feel that the circuit court could have ruled and should have ruled in the park district's favor based upon the notice of cancellation being effective on adverse possession and on the abandonment issue as well. I would simply ask the court to find in favor of the plaintiff and affirm. Thank you. Thank you, Counsel. Counsel, you may return to the defendant. I'm sorry. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honor. Initially, I heard Counsel state that the defendant had no knowledge of this other than the recordation. There's no evidence of that. There's no evidence of that. The only evidence in this case is the defendant's judicial admission of the existence and the recordation of the survey plat. So we have argued, we've said, that the defendant has judicially admitted actual knowledge of the survey plat. That survey plat is very important, as we'll talk about in just a little. The cases that the defendant has cited in support of its position with respect to the propriety of the notice of cancellation, none of them are easement cases. None of them are easement cases. Easements are contracts, admittedly, but easements are also easements, and easements have a law unto easements that is somewhat different from the law unto just regular contracts. And the case that we have relied upon and stated, set forth in our briefs, more than two or three times, is the McCann v. R. W. Duncan and Company case, which states unequivocally that unless an easement is abandoned, legally abandoned, or its purposes, even though those purposes have been stated in the easement, unless those purposes have been rendered impossible of performance or accomplishment, then there can be no termination of an easement. This easement contains all sorts of language of perpetuity. This easement also doesn't say anything. There is no language in it at all about reverter, condition subsequent, et cetera, right of reentry. That language is not there. So what do you have? You have an easement, its purpose is stated, and then, in addition, it's stated to be in perpetuity forever, et cetera, with words of inheritance in the easement. That easement is an express grant perpetual easement, and it cannot be terminated unilaterally or even by a court until such time as there has been a legal abandonment or the purpose stated in the easement becomes impossible of accomplishment. There is no evidence whatever in this case that the purpose of this easement was impossible of accomplishment in 1961, nor is there any evidence in the record that would show that the purpose of this easement is not the accomplishment, not subject to accomplishment today. That roadway can be built by the Cicerellis. Now, why haven't they built it? Can a subdivision be placed? The reason they haven't built it is because of the fact that notwithstanding that they ignored the propriety and the legality of the notice of cancellation, what person in their right mind would go ahead and start building this roadway if there was a purported cloud on the easement's title? So are you telling me the Cicerellis intend to build a six-home subdivision on that two-and-a-half-acre lot? They probably won't be able to build a six-home subdivision, but they certainly would be able to build some kind of home subdivision. Certainly, certainly the law is absolutely clear that if a portion of the dominant tenement continues to exist and the easement is appurtenant to that portion of the dominant tenement, the fact that a portion of the original dominant tenement has been sold to a stranger does not affect whatever the easement. The easement is still appurtenant to that portion of the dominant tenement that still exists, and the Park District makes no argument against that. That is clear. With regard to what your opponent styles as the failure of consideration and what you call the breach, since the 1950s when this easement first showed itself, there's never been the completion of this roadway. That's right. Okay. So what's the remedy? They're saying they can cancel because it's a failure of consideration. The contract is discharged, and so the grant of easement is discharged because of the failure of consideration. That's what he argues, but he doesn't have any easement law to support his position. And so your position is there's a remedy for the Park District for 40-some years of failure to build? There could have been an action against Mr. Soldati for damages. There could have been an action against Mr. Soldati for mandatory injunction. And then if he would have violated the mandatory injunction, like build the roadway, et cetera, then he would be violating the court order, an injunction. What's the remedy against your present clients? The remedy against my present clients? Your clients, yes. What's the remedy for the breach? Do they have an obligation to do something? Well, if the easement still exists, yes, they have an obligation to do what the easement's purposes are. And if we get through this case and the easement is as it should be, maintained in full force, then the Cicerellis will have an obligation to go ahead and build this road. There's no doubt about it. At the present time, are your clients in breach of the contract for the easement? Well, I don't know. The contract was not specifically assigned to them, but I think that the obligation to build the roadway still exists if the easement is still in existence. Whose obligation is it under your view? It would be the obligation of the owner of the easement. That would be your clients? Yes. So are your clients in breach right now of some contract obligation? Well, that's not in this lawsuit, but arguably they are in somewhat of a breach. However, they are not in such a breach that allows the easement to be terminated. This is a perpetual easement, and if you breach covenants in a perpetual easement, that does not terminate or give the right on the part of the serving tenant holder to terminate the easement. That's just the law. But we have not been able to get through virtually any of our contentions, but would have to rely upon what we stated in our briefs. I'll give you a minute to finish. Okay. The defendant's statement with respect to 735 ICLS 318 or 3518, the 40-year limitation statute, is just totally in error. And that is because under that statute, the plaintiff, by filing the survey plat, preserved its claim to the easement. Preserved the easement. All you have to do is file a claim, a record, et cetera, to the knowledge of the defendant within 40 years of the date of the easement, and that preserves it. And that means that the limitation provisions of 318 do not obtain. Moreover, that same statute violates or terminates or terminates by limitation the notice of cancellation. The notice of cancellation was created in 1961. That's a claim against the real estate, the real estate being plaintiff's perpetual easement. That claim was in 1961. The defendant's court assertion of the notice of cancellation was more than 40 years later. Now your time is up. Thank you, counsel. We will rely upon our briefs and ask that this case be reversed and remanded. Now. Your time is up. Thank you. Thank you. The court will stand on recess for a panel change. This case is taken under advisement, and a decision will be rendered with dispense. Thank you.